**REALTY INVESTMENTS, INC., Appellee,**

**v.**

**C. Eugene GOODWIN et al., Appellants.**

Court of Appeals of Tennessee,
Western Section.

Nov. 15, 1971.

Rehearing Denied Jan. 6, 1972.

Certiorari Denied by Supreme Court
June 5, 1972.

Henry M. Beaty, Jr., Memphis, for appellants.

H. L. Feibelman and Philip G. Kaminsky, Memphis, for appellee.

NEARN, Judge.

A suit was filed by Realty Investments, Inc., in the Circuit Court of Shelby County, Tennessee, for damages for the alleged breach of a real estate sales contract by the defendant sellers, C. Eugene Goodwin, et al. After hearing all the proof, the Trial Judge, sitting without a jury, found that the contract had been breached by the defendants and awarded plaintiff damages in the amount of $44,000.00. The defendants have appealed the Trial Court's judgment.

Numerous Assignments of Error have been filed, but they all raise only two issues. Those issues are:

1. Does the evidence preponderate against the finding by the Trial Judge that the sellers breached the contract?

2. Did the Trial Judge err in fixing the measure of damages at $44,000.00?

Suit was originally commenced on November 13, 1969, by Realty Investments, Inc. v. C. Eugene Goodwin and wife, Eloise P. Goodwin, T. David Goodwin and wife, Grace C. Goodwin, and Jesse S. Harris. Prior to trial, plaintiff took a nonsuit as to the defendant Jesse S. Harris. The filing of the Declaration produced a fusillade of pleadings from the defendants. Further discussion of the voluminous pleadings in this case is unnecessary. For the purposes of this Opinion, it will be sufficient to say that the matter proceeded to trial with Realty Investment, Inc., as the plaintiff-buyer and the Goodwins as the defendants-seller.

During the course of the trial many side issues were disputed and numerous technical objections raised. But, when all the proof was in, the true material facts clearly emerged. The facts which we hold are material are not disputed by the parties in Brief or in argument. The legal conclusion drawn therefrom by the Trial Judge is the appellants' real bone of contention.

The material facts are that the Goodwins and Realty are both experienced real estate developers. In 1964 the Goodwins were the owners of a tract of land in excess of 72 acres. Negotiations commenced between the parties for the purchase of the tract by Realty. At the time of the negotiations and at the time of the execution of the contract in question, the land in question was zoned ML, or light industrial, and was undeveloped for subdivision purposes. The contract provided all lots, except lot 123, were to be zoned R1–A or single family residence. Lot 123 was to be zoned R4–A or multiple family residence. Several proposed subdivision plats had been prepared by Jesse S. Harris, a licensed engineer in the employ of the sellers. Based upon one of these proposed subdivision plats, Realty agreed to buy 125 lots and a lot designated as lot 123, which was a five-acre lot shown on the proposed plat.

The proposed plat designated the subdivision as Graceland Farms subdivision. The total price was $500,000.00. The purchase price of lot 123 was $50,000.00. All parties knew that the property had not yet been zoned as indicated on the contract. Among other things, the contract was contingent upon the subdivision being approved by the Memphis and Shelby County Planning Commission as well as the City of Memphis and Shelby County authorities. The obtaining of proper zoning and approval of the subdivision was the duty of the sellers. The sellers also agreed to improve the road for the entire frontage of lot 123.

It is admitted by the defendants that they were aware of the fact that the buyer desired to erect apartments on lot 123 and that the ability to erect apartments on lot 123 was one of the main considerations for the purchase.

After the parties agreed upon the terms of the sale, the sellers obtained the necessary zoning of the property and approval of the subdivision plan by the proper authorities pursuant to the contract. During the period that this work was being accomplished, the sellers gave the buyer the privilege of submitting the subdivision restrictions that were to be placed upon the final recorded plat. The buyer submitted the restrictions and they were incorporated verbatim on the plat.

After the sale of the property was closed, Realty, Inc., commenced to sell residential lots. Approximately one year after the sale, Realty decided to develop lot 123 as an apartment site for 120 units. A loan commitment was obtained from a lending agency for the project, subject to title verification. Examination of the title revealed the fact that the subdivision restrictions provided inter alia:

"All lots in this subdivision shall be used for residential purposes only.

No structure shall be erected, altered, placed or permitted to remain on any residential building plot other than a sin-

gle family dwelling not to exceed two stories in height, and a private garage for not more than two cars, and by out-building incidental to the residential use of the lot."

When it was discovered that the restrictions provided in effect that only a single family dwelling could be erected on lot 123, approximately 60 residential lots had already been sold to private individuals by Realty. Effort was made by Realty to obtain a waiver as to lot 123 from the owners of the approximately 60 lots sold. The efforts to obtain the waiver without litigation were unsuccessful. Realty filed suit in the Chancery Court of Shelby County to have the restrictions removed as to lot 123, averring that it was through mistake that lot 123 was not excluded from the general restrictions. All lot owners and the Trustee under the Trust Deed on lot 123 were named party defendants. The Chancery Court litigation was settled by a consent decree which provided, insofar as pertinent to this case, that the restrictions to lot 123 be amended so that apartment units could be built on lot 123, but limiting the number of units to 80 instead of the originally contemplated 120 units. At the time of the settlement of the Chancery litigation, Realty and the Goodwins executed an instrument which in its essentials provided as follows:

"On March 7, 1969, Realty made clear that its position was that the present dilemma was due to the mistake of you (Goodwins) or your agents (Harris); further, that it was to the advantage of all parties not to include that issue in the present lawsuit (Chancery case). Therefore, in consideration of Realty Investment Company not including as parties in the present pending suit both of you, your wives, and your agents, you (Goodwins) specifically agree that all of the rights which Realty Investments, Inc., has or may have by reason of the inclusion of Lot 123 in the single family covenant provision are and shall be available to Realty. It is further agreed that

there is and has been no waiver or relinquishment of these rights by reason of the prosecution of the pending suit, regardless of the outcome of such pending suit. Of course, by this agreement there is no waiver of any defense which you may have." (Parenthetical words supplied for clarity)

From the foregoing limited description of the proof adduced, it can be readily seen that a mistake was made. The real question in this lawsuit is: Who made the mistake and who must suffer for it?

The Trial Judge found that there was no mistake made in the formation of the contract, but the mistake was made in the performance of the contract and such mistake constituted a breach of the contract. It is the Trial Court's conclusion that the mistake or breach was made by the defendants, with which appellants disagree. And so must we, for we are of the opinion that the evidence preponderates in favor of a conclusion contrary to that reached by the Trial Judge.

The Trial Judge was of the opinion that it was the duty of the Goodwins to deliver to Realty lot 123 suitable for an apartment site pursuant to the terms of the contract. That when Jesse S. Harris, the agent of the defendants Goodwin, recorded the subdivision plat with the erroneous restrictions affecting lot 123 thereon, the contract was breached by this act which prevented delivery by the defendants that which they had contracted to deliver.

It is true that the mistake made in the erroneous restrictions contained on the plat prevented Realty from receiving what they contracted to receive, but we are of the opinion that the Goodwins are not the cause of the plaintiff's loss.

Mr. Paul Ligon, Chairman of the Board of Realty Investments, Inc., testified that he prepared and delivered the subdivision restrictions to Mr. Gene Goodwin at Mr. Goodwin's request. He further testified that plaintiff was given the privilege of

defining the subdivision restrictions because it was buying the whole subdivision. Mr. Ligon admitted that the subdivision restrictions submitted by the plaintiff to the defendants could have easily provided for the exclusion of their application to lot 123.

Whether Mr. Ligon submitted the typed subdivision restrictions to Mr. Gene Goodwin or whether they were mailed to the office of Mr. Jesse S. Harris was a matter of considerable dispute. It was the plaintiff's contention that they were delivered directly to Mr. Goodwin, who in turn submitted them to Mr. Harris. It was the defendants' contention that the restrictions were mailed directly to Harris by the plaintiff. We think it makes little difference how they came into the hands of Jesse S. Harris. The fact is that Harris received the restrictions prepared by the plaintiff and placed them on the face of the plat to be recorded.

It is the plaintiff's position that admittedly everyone knew that lot 123 was to be used as an apartment site and, therefore, Harris should have known that the restrictions should not apply to lot 123 and should not have considered the restrictions as submitted by the plaintiff to apply to all lots, and should have provided for the exclusion of lot 123. We think this argument to be inapplicable because Harris' mistake was in not finding the mistake made by the plaintiff in preparing the subdivision restrictions. The breach of the contract was initiated and caused by the plaintiff. The parties admit that the defendants offered plaintiff the opportunity to draft the restrictions in any manner suitable to plaintiff, for in effect the plaintiff was purchasing the entire subdivision. The plaintiff accepted this offer and prepared restrictions which did not express the plaintiff's intent, either because they were in error or incomplete. The restrictions prepared by the plaintiff plainly state that all lots are to be residential and *no* structure other than a single family dwelling shall be erected thereon. Plaintiff

having accepted defendants' offer to prepare the restrictions, and plaintiff having prepared them, by what authority could the defendants or their agent, Harris, change them? Had Harris altered the restrictions prepared by the plaintiff to the plaintiff's detriment, we hardly think the plaintiff would now contend that Harris had authority to do so.

It must be admitted that had Harris or the Goodwins, who signed the plat containing the restrictions, carefully read the restrictions submitted by the plaintiff, they would and should have discovered plaintiff's error, for Harris was as aware of the intent of the parties as the Goodwins. In this they failed. However, could not the same be said for the plaintiff? Could plaintiff not have discovered its own error before circulating it to the defendants? Certainly it is chargeable with equal degree of knowledge of the intent of the parties as the defendants. We are not here dealing with parties in unequal positions. Both plaintiff and defendants are well versed in matters of real estate as both make their living therefrom. We do not find from the record that defendants offered and plaintiff accepted the responsibility of drafting restrictions applicable to all lots *except* lot 123, with the understanding that responsibility for restrictions on lot 123 were to be left to defendants. Plaintiff accepted the responsibility for all restrictions to all lots. This is evident by the wording of the restrictions that plaintiff prepared. The plaintiff failed in its own responsibility to its own detriment.

■ We agree with the Trial Judge that the maxim that where one of two innocent parties must suffer, the one who causes the loss must suffer the loss. However, we do not agree with the conclusion that the defendants were the cause of the loss. Where one party to a contract causes the other party to act on erroneous instructions given by the first, we hold there can be no recovery by the first party for loss incurred due to the second party's action

thereon, or the second party's failure to discover the first party's own error.

■ Therefore, we hold the evidence preponderates against the finding by the Trial Judge that the defendants were responsible for the breach. We are of the opinion that the plaintiff induced, caused, and is responsible for the breach and the evidence so preponderates.

Since it is our view that the plaintiff cannot recover for its own error, we never reach the issue of the measure of damages.

The judgment of the lower Court is reversed and the cause dismissed. The costs below and the costs of this appeal are adjudged against the appellee.

CARNEY, P. J., and MATHERNE, J., concur.

## ON PETITION TO REHEAR

A courteous Petition to Rehear has been filed by the appellee suggesting error in our previous Opinion in the matter.

The Petition alleges, among other things, that in the Court's Opinion of date November 15, 1971, it is stated "the buyer submitted the restrictions and they were incorporated *verbatim* on the plat" (emphasis supplied by petitioner) and that a comparison between Exhibit 26, which contains the subdivision restrictions submitted by Realty, and the recorded plat prepared by defendants shows *material* (emphasis ours) differences between the two.

We have again examined Exhibit 26, which is a poor, almost illegible reproduction of the original instrument used in the trial, and find that the petitioner is partially correct. On the recorded plat the misspelling of the word "by" has been corrected from the form "ay" used in Exhibit 26 and the word "or" has been substituted for the word "and" in one instance. Also, Exhibit 26 uses the words "developers of the subdivision" while the recorded plat uses the words "developer of the subdivision".

Furthermore, Exhibit 26 recites that the termination date of the covenants is on January 1, 1990, while the covenants as placed on the plat terminate July 1, 1990. (The recorded plat is dated July, 1965). Therefore, our Opinion is incorrect wherein it states that the restrictions submitted by the buyer were incorporated *verbatim* on the plat.

However, we disagree with petitioner's conclusion that such changes were material. We hold that such changes were not material and were not to petitioner's detriment. In the Opinion of date November 15, 1971, the words "without material change" are to be substituted for the word "verbatim".

The balance of the Petition to Rehear raises no issue not heretofore considered by the Court.

The Opinion of date November 15, 1971, is modified as herein noted and the Petition to Rehear is respectfully denied.

CARNEY, P. J., and MATHERNE, J., concur.